CHARLES W. JOHNSON *vs.* THE PHŒNIX MUTUAL LIFE INSURANCE COMPANY.

The plaintiff, in December, 1870, sent the following communication to an insurance company, who were tenants of certain rooms in a building owned by himself and others:—"Desiring to rent the office now occupied by you for a

term of years, I propose to make the following improvements, [specifying them,] and to rent the whole building above the main floor for ten years at the annual rent of $3,500, payable quarterly; the lease to commence April 1st. This proposition I make to the officers and directors of the P. M. L. Ins. Co. for the rent of the premises for ten years from April 1, 1871. *C. W. J.*" The directors of the company voted to accept the proposition, and the following certificate was written by the president under the communication of the plaintiff:—"The above proposition was accepted by our directors, January 9th, 1871. *E. F.*, President." A duplicate of the proposition and acceptance was made and signed, and each party took one. The company went into possession on the 1st of April, 1871, and no other lease was ever executed. After occupying for five years they removed from the premises, having given notice of their intent to do so. Held that the papers constituted a lease and not a mere agreement for a lease.

The question was to be determined by the intent of the parties, to be gathered from the language used interpreted in the light of the circumstances attending the transaction.

The statute (Gen. Statutes, tit. 18, ch. 6, sec. 14,) provides that "no lease of any houses or lands for any term exceeding one year, shall be effectual against any other person but the lessor and his heirs, unless it shall be in writing, and executed, attested, acknowledged and recorded in the same manner as deeds of land." Held that where a lease for ten years was made in writing and signed by the parties, but was not witnessed, acknowledged or recorded, it was effectual against the lessee as well as the lessor.

The object of the statute is only to invalidate such a lease as against third parties, but it is valid between the parties themselves.

The plaintiff, a part owner of the leased premises, and acting for himself and the other owners, had made the lease in his own name. Held that, so long as the lessees were not disturbed in their possession by the other owners, they could not avail themselves of the fact that the plaintiff had not the full title, or full authority to make the lease, in a suit brought by him in his own name for the rent.

ASSUMPSIT for rent of leased premises; brought to the Superior Court in Hartford County. The following facts were found by a committee:

In December, 1870, the plaintiff, acting for himself and certain others who were owners with him of the property below described, being duly authorized so to do, entered into an agreement with the defendants by the following written instrument:

"HARTFORD, CONN., Dec. 26, 1870.

"*To the Officers and Directors of the Phœnix Mutual Life Insurance Company:*

"GENTLEMEN:—Desiring to rent the office now occupied by you for a term of years, I propose to put into the second floor

of the building a good fire-proof vault of the dimensions of sixteen feet long by eight feet wide inside in the clear, in two compartments, and finish the same in a good and substantial manner, and build a two-story building over the gangway in the rear, with a good fall from the third floor, and finish said building and fall in good style, and in a substantial manner, and put new windows in the third floor, hung with weights, same size and dimensions with those on the second floor, take out the sky-light over the third floor, and finish up the front on Pearl street as it was before the sky-light was put in; also put new double doors at the foot of the stairs, with glass in them, and increase the width of the entrance, and make the stairs over, with new risers and tread, in a neat manner. And to rent the whole building above the main floor after these improvements are made, for ten years, at the annual sum of $3,500, payable quarterly; and to keep the building in good repair, covering the whole building with a coat of new paint after the completion of the above improvements and alterations, and a new coat of paint once in four years thereafter. If legally prevented from building over the gangway, then $200 per annum shall be deducted from the rent; but nothing but positive legal inability to build over the gangway shall prevent its being done. The vault to be built before the 1st of April, 1871, if desired; the other improvements to be made as soon as the rights of other tenants will permit; the lease to commence April 1, 1871. This is the proposition that I make to the officers and directors of the Phœnix Mutual Life Insurance Company, for the rent of the above described premises for ten years from April 1, 1871.

CHARLES W. JOHNSON."

"The above proposition was accepted by our directors, January 9, 1871.        E. FESSENDEN, *President*."

To the admission of this document in evidence the defendants objected on two grounds—first, that it was not in accordance with the statute; and second, that it was not a lease, but only an agreement for a lease. The evidence was received, subject to this objection.

Edson Fessenden, then the president of the defendant cor-

poration, executed the instrument, as appears upon its face, pursuant to a vote of the board of directors accepting the proposition as submitted by the plaintiff. It was executed in duplicate by the parties.

On the 1st day of April, 1871, the defendants were in the possession of a portion of the premises, under a former lease. On that day they went into possession of the whole, and so remained in possession until the 12th day of July, 1876, paying rent therefor as stipulated in the agreement. On the 12th of July they vacated the premises, but retained the possession and paid rent as before until the 1st day of April, 1877. On the last day of March, 1877, the defendants left the keys of the building with the plaintiff, but against his protest. Since that time no rent has been paid. The present suit is brought to recover two quarters' rent, one falling due July 1st, 1877, the other October 1st, 1877.

The officers of the corporation recognized and treated the instrument as a valid and binding lease until the spring of 1876. On the 9th of June, 1876, they sent to the plaintiff the following communication:

" DEAR SIR:—The Phœnix Mutual Life Insurance Company will leave the premises occupied by them for the last few years, on or about the 1st day of July next. We feel that we are justified in the course we are about to take, for the reason that you have not fulfilled the contract on your part, and done what you agreed to do if the company leased the premises of you. We have felt that we were compelled to leave, and should not do any wrong by leaving the premises now on your hands; but we are willing to do every thing that is right in the matter. We will therefore leave you the premises on the 1st day of July next, or will pay you the rent of the same to the 1st day of April next, as you may choose, with the understanding that we do not thereby waive any right to leave the premises.

Very truly yours, A. C. GOODMAN, *President*."

The plaintiff replied to this note, informing the defendants that he should hold them for the rent until the expiration of the ten years. The defendants vacated the premises on the 12th of July, 1876.

Soon after vacating the premises the defendants advertised them for rent, and made several unsuccessful attempts before April 1st, 1877, to let them for the remainder of the term. No such effort was made after April 1st, and since that date the defendants have not by word or act recognized the instrument as a valid lease, but have claimed and insisted that it was not binding upon them.

Prior to the letter of June 9th, 1876, the defendants had made no complaint of the non-fulfillment of the contract by the plaintiff. The plaintiff was legally prevented from erecting the building over the gangway, and in consideration of this the sum of $200 per annum was deducted from the rent, as stipulated in the agreement.

The alteration of the stairs and the front door was not completed until some time in the year 1874. The delay was occasioned in part by a suggestion from the secretary of the corporation, and in part for the convenience of the plaintiff. But it does not appear that the defendants suffered any inconvenience thereby, or that they ever made any complaint of the delay. The other alterations and repairs were made in substantial compliance with the terms of the agreement.

If upon the foregoing facts the plaintiff should be held to be entitled to recover, the committee found that he was entitled to recover the sum of $825, with interest from July 1st, 1877, and the further sum of $825, with interest from October 1st, 1877.

The court (*Beardsley, J.,*) accepted the report of the committee, and upon the facts found rendered judgment for the plaintiff to recover the sum of $1,709.94 and his costs. The defendants brought the record before this court by a motion in error.

*E. Goodman* and *C. E. Perkins,* for the plaintiffs in error.

1. By statute a lease for more than one year, to be binding on the lessee, must be in writing, witnessed, acknowledged, and recorded like a deed. The instrument in question went into effect January 9, 1871. The statute on the subject, as it existed at that time, was as follows: "No lease of any

houses or lands for life, or any term of years exceeding one year, shall be accounted good and effectual in law to hold such houses and lands against any other person or persons whatsoever, but the lessor or lessors and their heirs, unless such lease shall be in writing, subscribed by the lessor attested by two subscribing witnesses, acknowledged before some authority empowered to take the acknowledgment of deeds of land, and recorded at length in the records of the town where such estate lies." Revision of 1866, p. 541, sec. 24. In the revision of 1875 it reads that no such lease "shall be effectual against any other person," etc. The meaning and effect, however, are the same. Revision of 1875, p. 354, § 14. The intention is clearly to make such leases only leases for a year, *as against every one but the lessor.* The plaintiff however claims that the statute should be construed as if it read "any other person than the lessor *and lessee or their heirs,*" and that this court should add those words which the legislature left out. Such a course would be contrary to all the rules of construction. *Lindsley* v. *Brown,* 13 Conn., 192, 195; *Farrel Foundry* v. *Dart,* 26 id., 376. There is certainly nothing doubtful in the words used here, or anything in the act which shows any intention of the legislature to except the lessee. If they had meant to, it would have been the most natural thing in the world to have said so. Nor is there anything in the object contemplated which shows any such intention. The object of the legislature clearly was to assimilate long leases to deeds, and require the same precautions in executing them as in deeds. Only two exceptions are made—the lessor *and his heirs*—showing that the persons excepted were carefully considered. There was good reason for not excepting the lessee. As his tenancy might be ended at any time by the interposition of any creditor of the lessor, or by the lessor himself giving to any other person a valid lease, it would be manifestly unjust to make him bound for a term of years by an instrument which did not secure him the premises for the term, but left him at the mercy of the lessor or his creditors. To construe the statute in such a way as would enable the lessor to hold the lessee if

he wished, or, if he finds he can get a larger rent, to give a
lease to some other person who could evict the lessee, would
be most unreasonable.   No injury arises to the lessor from
our construction of the statute.   It is entirely in his own
power to execute a lease in any way he sees fit, and if he
does not do it in the manner prescribed by law, it is his own
fault.   If the plaintiff here has any equitable rights, they
are fully protected by holding this paper to be an agreement
for a lease, in which case a court of equity can, if under all
the circumstances of the case it seems just, oblige the defend-
ants to receive a proper lease; but by holding it to be a lease,
the defendants are deprived of all equitable claims they may
have.   There have been no decisions in this state upon this
question.   The nearest one is *Baldwin* v. *Walker*, 21 Conn.,
168.   In that case, however, the action was brought to recover
rent for the first year, and the lease was clearly good for that
time.   Any thing more said on the subject therefore is only
*obiter*.   There is a similar statute in Vermont, and the courts
there favor our construction.   *Sterling* v. *Baldwin*, 42 Verm.,
310; *Lemington* v. *Stevens*, 48 id., 41.   See also *Chandler* v.
*Kent*, 8 Minn., 526; *Richardson* v. *Bates*, 8 Ohio S. R., 260.

2.   This instrument is not a lease, but only a proposal or
agreement for a lease.   It will not be denied that there is a
clear distinction between a lease and an agreement for a
lease, nor that if this paper be only such an agreement, this
action of debt cannot be maintained, whatever remedy the
plaintiff may have in equity or otherwise.   The rule of law
applicable to such cases is the cardinal one of intention.
There are many decisions on this point, and the subject is
quite fully treated in Taylor on Landlord & Tenant.   He
says (§3): "As the law stands with us, the whole question
resolves itself into one of construction, and an instrument is
to be considered a lease, or only an agreement for a lease,
according to what appears to be the paramount intention of
the parties, as such intention may be collected *from the whole
tenor and effect of the instrument.*"   But the authorities have
settled one or two principles which will be of special assist-
ance to the court in this case.   One is, that if there are words

of *present demise,* such as doth let, doth demise, etc., that fact in general shows the instrument to be a lease, and on the contrary, if such words are not used, it shows that only an agreement is intended.   Another and most important rule is, that if it appears that something is to be done by the lessor before the lease is to begin, this shows almost conclusively that only an agreement for a lease is contemplated.   Taylor's Land. & Tenant, § 43; *Doe* v. *Ashburner,* 5 T. R., 163; *Gore* v. *Lloyd,* 12 Mees. & Wels., 463; *Dunk* v. *Hunter,* 5 Barn. & Ald., 322; *Hegan* v. *Johnson,* 2 Taunt., 148; *Morgan* v. *Bissell,* 3 id., 65; *Jenkins* v. *Eldredge,* 3 Story, 325; *Jackson* v. *Delacroix,* 2 Wend., 433; *McGrath* v. *City of Boston,* 103 Mass., 369; *Davis* v. *Thompson,* 13 Maine, 209; *Buell* v. *Cook,* 4 Conn., 238.   These authorities show at least this, first, that to make a lease there must be apt words of present demise, or a clear intention that the lease becomes binding immediately, though the term is to begin at a future time; and second, even if such apt words are used, if it appears that the lease is not absolutely to become binding at once, but that its existence at all depends on acts thereafter to be done, it is only an agreement.   Bearing these rules in mind, let us examine this paper.   So far as the words go, it is too apparent for question that this is a mere proposal for a lease. It says—" Desiring to rent the office now occupied by you for a term of years, I propose to put into the second floor," etc., " and to rent the whole building above the main floor, *after the improvements are made,* for ten years, the lease to commence April 1, 1871.   This is the *proposition* that I make *for the rent* of the above described premises for ten years from April 1, 1871."   The defendants say " *The above proposition* was accepted."   Now there is not in the whole of this paper a single word " apt to create a present demise," nor is there any expression from which it is to be gathered that the parties expected to be bound absolutely, whether the improvements were made or not.   No one will claim that this instrument was a lease when signed, December 26, 1871.   Did it become one January 9, 1871, when the directors " accepted the proposition ?"   If it did, and was on that day a valid lease,

then it necessarily follows that whether the improvements
were made or not, and whether the defendants ever took pos-
session or occupied it or not, they were liable for the rent for
ten years.   It is clear also from another fact that the parties
could not have considered this paper as a lease.   The plaintiff
did not own the property, and a lease, to be binding, must be
signed by the owners.   It is true that the plaintiff had the
charge and management of the property, and this is entirely
consistent with our claim.   He could make an *agreement* for
a lease, but could not make a lease.   It is worthy of notice,
also, that this paper is in no respect in the usual form of
leases, and contains none of the usual covenants and agree-
ments as to forfeiture on non-payment of rent, repairs, or
other matters usually put into leases.   The plaintiff in terms
recognizes it as merely a proposal.   Clearly the paper itself,
as it existed in December, 1871, was not a lease, but merely
a proposal for one.   Can it be that the mere fact of accepting
a proposal makes a lease?   In all cases of agreements it is
necessary that there should be an offer and an acceptance.
It needs the meeting of minds to make an agreement as much
as to make a lease.

3.   The lease, if to be regarded as such, is of no validity.
The owners of the property are not bound by it, nor any
other person but the plaintiff.   It is void by the statute of
frauds and perjuries.   By that statute no action can be
brought upon any agreement with regard to real estate, unless
a memorandum of it shall be made and signed by the party
to be charged therewith, or his agent.   The parties to be
charged therewith were the owners of the property.   This
has been signed by only one of the owners of the property.
It is not signed, nor does it purport to be signed, by him as
agent of the owners of the property.   To make his signature
as agent good, it is necessary that the name of the principal
should appear in the contract, and for whom he signed as
agent.   1 Parsons on Cont., 54; *Magill* v. *Hinsdale*, 6 Conn.,
464; *Savage* v. *Rix*, 9 N. Hamp., 263; *Spencer* v. *Field*, 10
Wend., 87; *Stackpole* v. *Arnold*, 11 Mass., 27.   Suppose that
the defendants were in possession of the property under an

agreement for a lease, and wanted a lease, could they compel a specific performance of the contract? They could not as against the plaintiff, because he did not own the property. All that could be got of him would be his interest. They could not against the owners, because they had not made any agreement to rent it. It follows then, as far as any thing appears, that the plaintiff could not do what he had agreed to do. We notified him we were going to leave the premises nine months before we left. He did not give us a lease from all the owners. Now as he has not done what he agreed to do, our case justifies us in leaving the property. Taylor's Land. & Tenant, § 48; *Eaton* v. *Whitaker*, 18 Conn., 222; *O'Rourke* v. *Percival*, 2 Ball & B., 64; *Bayly* v. *Tyrrell*, id., 338.

*W. Hamersley*, for the defendant in error.

CARPENTER, J. This case turns upon the construction of a written instrument which appears in full in the report of the committee. The question is, whether it is binding upon the defendants for the whole period of ten years. In other words, is the instrument a lease or merely an agreement for a lease? Both parties agree that whether it is one or the other depends upon the intention of the parties as gathered from the language used when interpreted in the light of the surrounding circumstances.

It appears from the instrument that the defendants, at the time it was executed, December 26th, 1870, were in possession of a portion of the premises, and so remained until the time when it was to take effect, April 1st, 1871. The language of the writing is—"Desiring to rent the office now occupied by you for a term of years, I propose to [make certain repairs specified] and to rent the whole building above the main floor, after these improvements are made, for ten years, at the annual sum of $3,500, payable quarterly, * * * the lease to commence April 1, 1871. * * * This is the proposition that I make to the officers and directors of the Phœnix Mutual Life Insurance Company for the rent of

the above described premises for ten years from April 1, 1871.". This was signed by the plaintiff, and appended to it is the following:—"The above proposition was accepted by our directors, January 9th, 1871. E. Fessenden, President." The agreement was executed in that manner in duplicate.

The language of the instrument indicates a present lease to commence in the future. There is no reference to a formal lease or other writing to be thereafter executed. On the contrary the whole language is consistent with the supposition that the parties intended the writing itself as a lease. It contained a specific statement of the repairs and alterations to be made by the plaintiff, the time when the tenancy should commence and terminate, the amount of rent to be paid and the time when payable, and each party retained a duplicate of the writing. Here are all the elements of a valid lease—parties, a subject matter particularly described, a definite term, its beginning and ending fixed, and the amount of rent with terms of payment. The instrument is deficient only in matters of form. No other writing is contemplated by the language, and none was in fact executed or called for. But the defendants took possession April 1st, 1871, occupied the premises up to July, 1876, paying rent according to the terms of the instrument, and during all that time both parties treated it as a lease. We think it is very clear that both parties intended it as a lease, and if we hold that they intended it merely as an agreement for a lease we shall do violence to their real intention.

Another question made is, whether the lease, not having been executed in the manner prescribed by statute, not having been witnessed, acknowledged, or recorded, is binding upon the defendants. The statute then in force reads as follows: "No lease of any houses or lands, for life, or any term of years exceeding one year, shall be accounted good and effectual in law, to hold such houses and lands against any other person or persons whatsoever but the lessor or lessors and their heirs, unless such lease shall be in writing, &c."

The primary object of a lease is to convey to the lessee an interest in land. It usually contains also covenants on the

part of both parties, the lessee covenanting to pay rent, &c. The statute was designed to have the titles to real estate, and any interest therein for a longer time than one year, appear of record, and that for the purpose of protecting third parties. As to third parties therefore a lease such as this is is inoperative. As between the parties to it the legislature clearly intended that it should be valid. The statute has reference to that portion of a lease which conveys to the lessee an interest in real estate, and expressly makes that good as against the lessor and his heirs, and in favor of the lessee. We do not think that the legislature intended to make such a contract valid as to one party and void as to the other. We think it a reasonable construction of the statute to hold that it was intended to make the contract valid as to both parties if to either. Otherwise there would be a want of mutuality. We can hardly impute to the legislature an intention to compel the plaintiff to permit the defendants to occupy the premises during the term without imposing upon the defendants a corresponding obligation to occupy or at least to pay rent. The lease itself being in force as against the plaintiff, we think that the agreement to pay rent is in force as against the defendant.

This question, however, is hardly an open one in this state. In *Baldwin* v. *Walker*, 21 Conn., 168, it was held that a lessee was liable in covenant for rent when the lease was unacknowledged and unrecorded. See also *Barnum and others* v. *Landon and others*, 25 Conn., 137.

The counsel for the defendants urged that the plaintiff was not the sole owner of the premises, that other parties were interested who did not sign the writing, and that therefore it could not be regarded as a lease because it was not signed by all the owners, and that it is not valid as a contract for a lease as against any one but the plaintiff himself. From these circumstances, together with the fact that the plaintiff, when notified that the defendants would vacate the premises, did not procure a lease signed by the owners, the inference is drawn that the defendants were justified in leaving the property. This is not insisted on as affecting the question of

construction; it seems rather to be urged as a distinct ground of defense. As such it does not appear to have been raised in the court below, nor is it distinctly pointed out as a ground of error in the motion. But waiving that, we do not think that the inference is a legal conclusion from the facts.

The report of the committee shows that the plaintiff was duly authorized to make this contract. In what manner the authority was conferred does not appear. Possibly it was by deed or other writing; or perhaps the plaintiff had been accustomed to rent the property as his own with the knowledge and by the consent of the other owners. However it may have been, it appears that the defendants were permitted to occupy the premises for six years without objection from the other owners. As lessees they could not call in question the title of the lessor so long as they remained in the undisturbed possession of the premises. More than half of the term had expired and they were not disturbed, and it was no part of their grievance that they apprehended any disturbance, but they vacated the premises for other reasons. The plaintiff might well lease or contract to lease property owned by himself and others, and such a lease or contract would bind him, although it might not be binding upon the other owners. So the lease in this case binds the plaintiff at least. The defendants have a right to the leased premises as against the plaintiff for the full term. He is bound to see that they enjoy that right or he must respond in damages. Should they be evicted from the whole or any part of the premises by the other owners their obligation to pay rent would cease, and his obligation to pay damages would at once arise. Until then we do not see that they are in a condition to dispute his title.

His title is good as to them so long as they are in possession, and if the plaintiff is in a condition to secure to them during the term of the lease the quiet enjoyment of the premises, their obligation to pay rent continues unaffected by the fact that other parties were interested in the title.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred