SOCONY-VACUUM OIL COMPANY, INC. *v.* GEORGE ELION ET AL.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued December 6, 1939—decided January 18, 1940.

*Frank L. McGuire*, with whom was *Morris Lubchansky*, and, on the brief, *Francis F. McGuire*, for the appellants (defendants).

*Arthur M. Brown* and *John H. Yeomans*, for the appellee (plaintiff).

BROWN, J. In this action claiming specific performance by the defendants of a lease from them to the plaintiff of a tract of land in Groton for use as a gasoline filling station, the court rendered judgment for the plaintiff, and the defendants have appealed, claiming that the court erred in its findings of facts and conclusions, in overruling the defendants' claims of law, and in admitting certain evidence. The fundamental question presented is whether the court was warranted in concluding, as it did, that the negotiations between the parties resulted in a complete contract, the terms of which were later to be embodied in a written contract to be executed in duplicate by the parties and copies thereof mutually exchanged, or whether the execution of the written contract and the

mutual exchange of the duplicate copies was a prerequisite to the formation of a contract, as contended by the defendants.

The defendants are entitled to no correction of the finding as to facts material to the appeal. The finding, summarized in incidental particulars for brevity, shows these essential facts. The defendants owned a tract of land at the intersection of two main highways in Groton and since 1936 had considered using it for a gasoline filling station. Walter R. Martin, as plaintiff's agent to secure retail outlets for its gasoline, having failed after extended negotiations theretofore to reach a definite agreement with the defendants for the purchase or lease of this land for a gasoline station, in June, 1937, believing the defendants had offered to lease it on terms and conditions which would be satisfactory, submitted them to his superiors. These were duly approved by the plaintiff, which prepared a lease embodying them. Plaintiff's real estate field representative Hollister, whose duty it was to close negotiations for service station sites, and who had authority to make leases of real estate after the proposed lease had been approved by proper officials at the plaintiff's home office in New York, continued negotiations with the defendants, and in August, 1937, presented this lease to them for execution. The defendants refused to sign it, claiming that it did not provide, as agreed between them and Martin, that in addition to the $1771 expenditure for installations by the plaintiff which the lease recited it agreed to bear and had made appropriation for, the plaintiff was also to install a lift, fix the driveways and surface the yard. The defendants now insisted that the plaintiff undertake this further expense. Hollister reported this. The proper officials of the plaintiff's home office approved the change in the terms of the lease to meet this demand,

and an additional sum of $1235 was appropriated by the plaintiff to cover expenditures necessitated by the change in terms. The plaintiff thereupon prepared, and prior to September 21, 1937, its proper home office officials approved, a lease embodying the terms and conditions demanded by the defendants and certain other changes in respect to the term of the lease.

On or about that date Hollister left this lease in duplicate with the defendants and advised them that the plaintiff was ready and willing to lease the premises upon the terms and conditions therein, and that if they desired to lease to the plaintiff they should execute and return it to the plaintiff at Boston. It was the intent of the parties that the lease should become effective as soon as it was accepted and approved by the defendants, and that it should be executed by a proper official of the plaintiff on its behalf and a copy returned to the defendants, but neither the execution nor the return was a condition precedent to the lease becoming effective. The time of its return was not of the essence of the contract. On October 5, 1937, the defendants in good faith intending it to be immediately binding upon the parties, executed and mailed the lease in duplicate to the plaintiff at Boston in a letter stating: "Please have the date of the lease corrected, signed and return our copy as soon as you possibly can, as we are anxious to proceed as planned." The defendants by executing the lease accepted the plaintiff's offer to lease the premises. Hollister completed the duplicates as requested. On October 14, 1937, he took the lease unsigned by the plaintiff to the defendants to have initialed by them certain riders and provisions which they had failed to initial. This the defendants did and returned the duplicate to Hollister. In response to the defendants' inquiry on October 14, 1937, as to when the lease would be exe-

cuted by the plaintiff and their duplicate returned to them, Hollister showed them the authorizations for expenditure by the plaintiff evidencing the appropriations and the purpose for which they were made, both for the installations totaling $1771 and for those totaling $1235. He told them they would get their duplicate back though he could not tell just how long it would take, but that it was all agreed upon, that the plaintiff had made the necessary appropriation for its part of the equipment for the property, and that they had nothing to worry about. He also told them that the lease had been authorized and approved by the proper officials of the plaintiff, and having been accepted by the defendants was then in full force and effect and binding on the parties, and that the execution of the lease was a mere formality. And when the defendant Harry Elion urged haste in returning the executed duplicate as it was getting cold and he wanted to get work started, Hollister, referring to the existence of the binding agreement, said that the defendants could immediately start work on the development of the service station.

On October 18, 1937, the defendants started the erection of the building and the development of the premises in accordance with the terms of the lease, relying upon the fact that they had a binding agreement with the plaintiff, and upon Hollister's representations that the lease was approved and binding before executed by the plaintiff. That same day Martin conferred with the defendants relative to the development of the premises for gasoline service station purposes. On November 9th he again conferred with them at Groton relative to the location of signs, pumps, air tower and equipment which were to be installed by the plaintiff on the premises, and on November 12th he and the plaintiff's engineer Wagg

conferred with the defendants relative to the layout of the station and the installation of the equipment thereon by the plaintiff. As the work proceeded the plaintiff's agents on occasions up until November 12th were upon the property discussing and considering with the defendants the grading, location of the driveways, curbs and certain other installations. In so doing and in ordering equipment to install on the premises the plaintiff was relying upon the lease. The building was completed about December 24, 1937.

On October 16, 1937, Hollister took the lease in duplicate back to Boston. On November 3, 1937, it was executed in duplicate by a duly authorized officer of the plaintiff. On November 19th the plaintiff had one of the executed leases recorded in the Groton land records and sent the other to the defendants. Between October 16th and November 19th the lease was in the possession of the plaintiff and was referred to its Boston, Providence and New York offices for attention.

On November 17, 1937, the defendants sent a letter to the plaintiff notifying it that "any agreements hereinbefore made by us are ended and terminated" and that "the premises . . . will not be leased to you" because of the breach of the "express condition and promise on your part that you would sign it [the lease] and return it to us forthwith." Between October 14th and November 17th they neither requested a return of their copy of the lease nor inquired as to whether it had been executed by the plaintiff. During the final period of the parties' negotiations at least, unknown to the plaintiff, the defendants were negotiating with other prospective tenants for the property, and on December 5, 1937, executed two leases to another party, a short form for record and a longer form referred to therein containing secret agreements. A provision of this arrangement required the lessee to

purchase of the defendants all commodities sold at the station, which rendered it much more advantageous to them than their agreement with the plaintiff.

The court concluded that Martin and Hollister in behalf of the plaintiff negotiated an oral lease with the defendants in the terms of the lease in duplicate as initialed by the defendants on or about October 14, 1937, and both the plaintiff and defendants were bound thereby; that the lease in duplicate is a memorandum in writing signed by the defendants, sufficient to satisfy the Statute of Frauds and to make that agreement between the parties enforceable against the defendants despite the statute; and that the plaintiff is entitled to a decree of specific performance of the lease upon a tender of payment to the defendants of that proportion only of the total cost of the work and equipment incident to the installation they had made which the time the plaintiff is to occupy bears to the original term of the lease. By their claims of law in addition to those relating to their contention that there was no binding contract, the defendants claimed that neither Hollister nor Martin had power to bind the plaintiff. All of their claims were overruled by the court.

Whether the defendants' execution and subsequent initialing of the lease in duplicate and transmission of it to the plaintiff was an offer to lease only, requiring the plaintiff's execution of it as a condition precedent to the creation of the leasehold, as contended by the defendants, or consummated a complete contract, as claimed by the plaintiff and as held by the court, depends upon the intention of the parties. *Johnson* v. *Phoenix Mutual Life Ins. Co.*, 46 Conn. 92, 101; *Garber* v. *Goldstein*, 92 Conn. 226, 228, 102 Atl. 605; *Atlantic Terra Cotta Co.* v. *Chesapeake Terra Cotta Co.*, 96 Conn. 88, 95, 113 Atl. 156; *Winn* v. *Bull*, L. R. 7 Ch. Div. 29, 6 English Ruling Cases 171; 1 Williston;

Contracts (Revised Ed.) § 28, § 28A; 12 Am. Jur. 522, § 25; Restatement, 1 Contracts 33, § 26. As this court said in the *Garber* case, supra, 228: "If the parties intended the agreement to be one of letting it will so operate, notwithstanding a formal lease is to be later on executed. If, on the other hand, the parties intended that their agreement should be as finally evidenced by a formal lease, until the execution and delivery of the written instrument the lease does not exist." What this intention was presents a question of fact for the determination of the trier. *Atlantic Terra Cotta Co.* case, supra, 97; *Lawrence* v. *Hamilton,* 111 Conn. 493, 496, 150 Atl. 690. It is to be "gathered from the language used when interpreted in the light of the surrounding circumstances." *Johnson* case, supra, 101. The trial court has resolved this vital question of fact in the plaintiff's favor and determined that the execution of the lease by the defendants concluded a complete contract. Not only the inclusiveness of the terms contained therein as shown by the lease and other evidence directly bearing upon this issue warrant the court's finding, but the supplemental facts found are strongly corroborative of it. Among these are the response of the plaintiff in incorporating in the duplicate lease every provision insisted upon by the defendants after the extended negotiations; the assurances given the defendants by Hollister when they signed, that the agreement was binding upon the plaintiff, that execution of the lease by it would be a mere formality and that they could therefore proceed with the construction forthwith; the acts done by both parties from October 18th in pursuance of the contract; the failure of the defendants to make any inquiry as to whether the plaintiff had executed the lease or to ask for the return of the duplicate; and the defendants' attempted revocation of the arrangement by their

letter of November 17th, evidently prompted by their subsequent lease made on more favorable terms to another. The court's findings and conclusion correctly reached, therefore present a proper case for the application of the principle which Professor Williston states in these words: "If . . . the parties have definitely agreed with one another upon all the terms that a proposed written contract shall contain, there is a contract, for they have made positive promises to one another, certain in their content and sufficient as consideration for one another." Williston, supra, 64.

Among the court's rulings upon evidence assigned as error, were several admitting testimony of the negotiations and the changes made in the proposed arrangement as these progressed between Martin, representing the plaintiff, and the defendants for the leasing of the property. This evidence the defendants objected to as irrelevant and immaterial. It was properly admitted as a part of the negotiations to show the various steps which preceded and led up to the agreement finally reached, and particularly in connection with the plaintiff's undertaking to make the further expenditure required thereby to satisfy the defendants' demands, as indicative of its finality. *L. & E. Wertheimer, Inc.* v. *Wehle-Hartford Co.*, 126 Conn. 30, 36, 9 Atl. (2d) 279. The defendants also claim that the court erred in admitting through Frank W. Lovejoy, an employee of the plaintiff called by it as a witness, certain interdepartmental letters and approvals of expenditures relating to the contemplated leasing of this property. These were objected to as not having been communicated to the defendants, and hearsay. They were properly admitted as writings incident to the plaintiff's participation in the transaction, relevant to the issue of whether there was intent to make a lease which would be immediately binding, and corroboratory of

the oral testimony of the witness. In a somewhat similar situation we held a hospital bill admissible in evidence after a witness had testified to its amount. *Richmond* v. *Norwich,* 96 Conn. 582, 591, 115 Atl. 11. The testimony as to the making of the lease to another, more favorable to the defendants, before they received the lease executed by the plaintiff tended to show that they disavowed the latter, not because there was no intent on their part when it was made that it should be immediately binding, but because they were seeking a pretext to avoid it.

The only other rulings upon evidence assigned as error which merit consideration, relate to proof of the authority of the plaintiff's several agents participating in the action on its behalf eventuating in the contract. While the defendants' objection that this authority could not be proved by their own testimony and must be proved by corporate records, showing that it had been conferred in accord with the corporation's by-laws, might well be effective in some cases, it cannot avail the defendants here. Whatever the lack of authority or of the possible proof thereof may have been at the time of the agents' acts on its behalf, the subsequent suit brought by the plaintiff constituted a complete ratification. Under such circumstances proof of the actual authority was unnecessary. *O'Leary* v. *Skilton,* 102 Conn. 475, 478, 129 Atl. 45. What we said in that case is true of the situation here: "Here on the face of the papers is clear ratification of [the agents'] act, which related back to the time of the execution of the lease and was 'tantamount to a prior command.' *Shoninger* v. *Peabody,* 57 Conn. 42, 47, 17 Atl. 278; 1 Mechem, Agency (2d Ed.) § 446 et seq." The admission of the testimony as to the authority of the plaintiff's agents was at most harmless error. *Corsello* v. *Emerson Brothers, Inc.,* 106 Conn. 127,

135, 137 Atl. 390; *Cone* v. *Cullen,* 108 Conn. 126, 131, 142 Atl. 674.

There is no error.

In this opinion the other judges concurred.