Edward Watson GODFREY, Plaintiff-Appellant,

v.

Gilbert W. HEUBLEIN, Defendant-Appellee.

No. 166, Docket 23239.

United States Court of Appeals, Second Circuit.

Argued Jan. 13, 1955.

Decided Feb. 7, 1955.

Maxwell M. Merritt, Sidney D. Pinney, Jr., Hartford, Conn. (Shepherd, Murtha & Merritt, Hartford, Conn., of counsel), for plaintiff-appellant.

Joseph P. Cooney, Hartford, Conn. (Stanley I. LaCov, New York City, of counsel), for defendant-appellee.

Before CLARK, Chief Judge, and FRANK and HINCKS, Circuit Judges.

HINCKS, Circuit Judge.

Plaintiff-appellant was employed by the appellee under a written contract of employment covering the period from February 11, 1947 to January 1, 1952.[1] Both parties to this action are physicians and by that contract plaintiff was engaged to assist defendant in his practice of medicine in Hartford, Connecticut. Under this contract, the defendant was to pay the plaintiff a regular salary of $7,000 plus 25% of the net profits of the practice per annum and, in addition, was each of the years of the agreement to credit him with a percentage of the proceeds of the practice which otherwise would inure to defendant alone.[2] These credits were to be applied to the purchase by plaintiff of 24½% interest in a partnership to be formed, at plaintiff's option, at the termination of the employment agreement between plaintiff and defendant and one Doctor Bernstein, who was also a party to the employment contract under which he too was given an option to purchase a partnership interest in the practice.

Under Paragraph 8(a) of the employment contract it is provided that if plaintiff was still associated with defendant as of January 1, 1952, he would be entitled to become a partner.[3] And Paragraph 8(d) of the contract provided that if the plaintiff is not associated with the defendant or "shall elect not to enter into a partnership after January 1, 1952 with the" defendant, then the credits should, adopting the phraseology of the

1. Jurisdiction is based on diversity of citizenship and amount in controversy.

2. "8. In addition to paying the salaries and percentages hereinbefore set forth, but *solely* for the purposes hereinafter defined, said Heublein further agrees to credit to said Godfrey and/or Bernstein during the term of this agreement or as long as said Godfrey and/or Bernstein remain associated with said Heublein, whichever period is the shorter, the following percentages to each: * * *."

3. "(a) If either said Godfrey or said Bernstein shall be associated with said Heublein on January 1, 1952, each then so associated shall be entitled to a share in a partnership to be formed with said Heublein for the continuance of said office and practice, the value of each such share, if both shall then be associated, not to exceed twenty-four and one-half per cent (24½%) of the appraisal of said office and practice as determined by three disinterested persons as soon as practicable after January 1, 1952, and there shall be applied against the purchase of each share the credits hereinabove set forth."

contract, "revert" to the defendant.[4] Plaintiff remained in defendant's employ until January 1, 1952, but it was not until March 3, 1952, that the three doctors were able to find time to discuss the proposed partnership. From the evidence it does not appear that the delay was due to any reluctance on the part of defendant, but rather because each physican was faced with heavy professional obligations.

Although the options to the plaintiff and Bernstein extended only to a partnership in which the defendant should have a 51% interest, at the March 3rd meeting, Bernstein sought a partnership on terms more favorable to him. Plaintiff, however, indicated that he was quite willing to become defendant's partner on the terms provided in the employment contract. No formal written partnership agreement was consummated at this meeting or thereafter. This was due, it may be fairly inferred, to Bernstein's recalcitrance. However that may be, without objection by the plaintiff, or indeed by the defendant or Bernstein the execution of a partnership agreement was indefinitely deferred pending further negotiations. On April 7, 1952, the plaintiff accepted a position in Princeton, New Jersey, in preference to continued practice in Connecticut. On June 15, 1952, the plaintiff severed all relationship with the defendant.

For the month of February, 1952, the plaintiff received from the defendant one-third of the net proceeds of the office which would have been his share if the partnership between the three doctors envisaged by the earlier employment contract had come into effect.

The plaintiff reported as gross income the credits to which he was entitled under the employment contract, as stated above, in his income tax return for each of the years between 1947 and 1952.

These credits aggregated $10,715.18 and the plaintiff brings the instant action for their recovery. The court below entered judgment for defendant and this appeal resulted.

■ It seems clear that plaintiff's right to the credits depended on the formation of a partnership. Under the contract the sum credited to the plaintiff was to be applied against the purchase of a share in the partnership and if after February 1, 1952, plaintiff elected not to become a partner the credits were to "revert" to the defendant. The crucial question, then, is whether a partnership between the plaintiff and defendant was ever formed. We think the trial judge was right in deciding this question adversely to the plaintiff.

■■ The court below held that a formal written contract was necessary to the formation of a partnership in this case. Plaintiff contends that he accepted defendant's offer at the March 3 meeting and that everything essential to a binding relationship was fully understood and agreed upon at that time. Hence, plaintiff argues, no formal writing was necessary. Under Connecticut law, which is here applicable, whether, in the absence of statutory provision, a formal writing is necessary to the formation of a contract is a question of fact. See Socony-Vacuum Oil Co. v. Elion, 126 Conn. 310, 11 A.2d 5; Garber v. Goldstein, 92 Conn. 226, 102 A. 605. Under this doctrine the trial judge must find whether it was the intent of the parties to be found without a written instrument. See 1 Corbin on Contracts, Section 30. The trial judge found against the plaintiff on this issue and we may not reverse his finding unless it is shown to be clearly erroneous. See Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

4. "(d) In the event that neither said Godfrey nor said Bernstein shall be associated with said Heublein or in the event that either or both of them shall elect not to enter into partnership after January 1, 1952 with said Heublein, then all contingent right, title and interest in and to amounts so credited to said Godfrey and/or said Bernstein as hereinabove provided shall pass and revert to said Heublein."

There is much evidence to support the trial judge's ruling. Paragraph 8(f) of the contract refers to a "partnership agreement to be drawn" which fairly imports an intent that a partnership attested by a formal writing was contemplated by the parties. For plaintiff to purchase his share in the partnership a capital contribution of upwards of $6,000 would have been required of him in addition to the aggregate credits of $10,000. There is no evidence that on March 3rd, when the plaintiff contends an informal partnership was formed, plaintiff was able to provide the necessary capital and no evidence whatever that he actually tendered it. It is true that the defendant in his eagerness to consummate a partnership later offered to finance the plaintiff's necessary capital contribution. But, although at the March 3rd meeting the plaintiff expressed willingness to become defendant's partner, no specific arrangements were then or thereafter made as to the terms on which the defendant would finance the plaintiff's capital contribution. And, perhaps more important, the terms of the partnership, including both the amount of the capital contribution by the plaintiff and his share of the partnership profits, depended upon Bernstein's election to participate. And prior to April there had been no unequivocal manifestation of Bernstein's position.

Plaintiff's willingness to become a partner continued for a time, but his decision in early April to forsake Connecticut for Princeton, makes it difficult to believe that even he really considered that in March he had become a member of a partnership. And as all the evidence showed, the defendant's desire to effectuate a partnership continued until terminated by the plaintiff's decision to remove to Princeton. Certainly the record fails to show any breach of the defendant's promise to form a partnership.

In view of the foregoing, we find no basis for the plaintiff's contention on appeal that Judge Smith's finding that the plaintiff "never entered into or presently intended to enter into a partnership" with the defendant, is inconsistent with his subordinate findings. No one questions that on March 3, 1952 the plaintiff *intended* to enter a partnership as soon as all the terms could be agreed upon and embodied in an integrated writing. But the evidence amply supported a finding that the plaintiff never intended to enter into an informal partnership not integrated into a written agreement. And read in context that is all Judge Smith's finding meant.

The fact that plaintiff for the month of February received a partner's share in lieu of the stipulated salary does not necessarily, in view of the background evidence, import more than expectation on the part of the parties that soon a partnership would be formed under terms retroactive to January 1st, in accordance with the employment contract. Even the plaintiff does not contend that a partnership had been formed, either informally or otherwise, as early as February. And any possible inference that the measure of his compensation for February betokened a partnership is negatived, or at least neutralized, by the fact that from March to June he accepted compensation on a salary basis without claim for a partner's share.

The fact that the plaintiff and presumably the defendant on their respective tax returns each year reported the credits as income to the plaintiff, has no bearing on the issues here. The fact is referable to a supposed advantage, tax-wise, to report the credits annually rather than in an aggregate amount when the expected partnership should be formed. Here again is a fact which betokens at most an expectation of a future partnership and not its actual accomplishment.

Since, as we hold, there was no breach on the part of the defendant of his promise to form a partnership with the plaintiff, neither law nor equity entitled the plaintiff to recover the credits. For the credits were monies of the defendant

deriving from his practice which were to become available to the plaintiff only on condition that he should enter into the contemplated partnership. The prior employment contract referred to the plaintiff's rights to the credits as "conditional rights." The judgment below involved no forfeiture of plaintiff's rights to the credits. His own unequivocal election in April not to enter into such a partnership wholly terminated his contingent rights thereto. The monies, which at all times had been in the defendant's possession, thereby were released from the plaintiff's contingent rights without need for any affirmative action on the part of the defendant.

Judgment affirmed.