[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter comes before the court on defendants' Motion to Discharge Lis Pendens filed March 20, 1998. A hearing was held on June 2, 1998 pursuant to Section 52-325a of the General Statutes for the purpose of determining probable cause in connection with the second count of plaintiff's complaint seeking specific performance of an alleged contract for the purchase and sale of a tract of land. The matter was subsequently briefed and argued on June 8, 1998.
Based on the evidence adduced at the hearing, this court is satisfied that the plaintiff was approached by two of the defendants, Patricia and Roger Hernsdorf, with respect to the purchase and sale of property owned by the four defendants. CT Page 6927 Further contact and negotiations with the Hernsdorfs resulted in the Letter of Intent (Plaintiff's Exhibit 1 and 2) executed March 28, 1997 with the final two signatures of Earl and Donna Wright who were then residing in Florida.
The Letter of Intent evidenced an agreement that the defendants allow the plaintiff the opportunity to inspect and test the premises for purposes of determining suitability for development; that the determination be completed by April 30th; and that a determination of suitability would "enable" the plaintiff to enter an agreement for the purchase and sale of the premises in accordance with terms contained in the body of the Letter of Intent. Subsequently, with the execution of Plaintiff's Exhibits 3 and 4, the plaintiff's deadline for determining suitability was extended until May 14th, 1997.
This court is further satisfied that the plaintiff determined that the property was suitable for development on or before the extension deadline, notified at least one of the defendants, and proceeded to negotiate the configuration of the lots to be retained by the defendants under the terms of the purchase and sale agreement referred to in the letter of intent and to begin the process of obtaining the necessary permits and approvals to consummate the deal. Mr. Lalley, plaintiff's engineer, handled negotiations with the defendants concerning the configuration of the lots to be retained; took the steps necessary to obtain the Wetlands permit; took the steps necessary to obtain the approval of the town for the construction of a road to the premises; and prepared the sub-division plan for the Town Planner. Plaintiff, further, discussed the project with realtors, advertised the project, and obtained interested parties.
Based on the testimony of Mr. Lalley together with Plaintiff's Exhibits 7 through 12 this court is satisfied that, over a period of time, the engineer was succeeding in satisfying the defendants with respect to the configuration of the lots to be retained though no formal collective assent was received.
Ultimately the proceedings were delayed when the Town Planner failed to approve the sub-division plan as presented. On October 20, 1997 the plaintiff received a letter from defendants' attorney (Plaintiff's Exhibit 14) expressing dissatisfaction with the time being taken; suggesting that the structure of the original transaction had changed; and further suggesting a modification of the terms referred to in the Letter of Intent. CT Page 6928 From that point letters were exchanged between attorneys for the parties in an effort to compromise the differences and eventually negotiations broke down completely.
Both in its complaint and brief, plaintiff claims to be entitled to specific performance as a result of a enforceable contract for the sale and purchase of the premises as evidenced by the Letter of Intent.
As defendant notes in its brief, specific performance with respect to real estate is not appropriate unless there exists a binding contract which is fair, equitable, certain and mutual, consistent with policy and made on good consideration. Burns v.Gould, 172 Conn. 210, 214 (1977). The question before this court is whether the Letter of Intent constituted a binding and enforceable contract for the sale and purchase of real estate or merely a document evidencing an intention to create a binding contract. The intention of the parties is, of course, controlling. Socony-Vacuum Oil Co., Inc. v. Elion,126 Conn. 310, 316 (1940). The law does not make a contract when the parties intend none nor does it regard an arrangement as completed which the parties thereto regard as incomplete. NewHaven Tile Floor Covering Co. v. Roman, 137 Conn. 462, 464
(1951). "Whether the parties intended legally to bind themselves prior to the execution of a formal contract is to be determined from (1) the language used, (2) the circumstances surrounding the transaction, and (3) the purpose that they sought to accomplish . . . (Citation omitted.) . . . A consideration of these factors enables a court to determine if the informal contract . . ., is enforceable or merely an intention to negotiate a contract in the future. (Citation omitted.) Fowler v.Weiss, 15 Conn. App. 690, 693 (1988).
Based on the evidence this court is satisfied that the Letter of Intent was just what the term suggests; a document evidencing an "intent" to subsequently enter into a final written agreement for the purchase and sale of land. A significant term in the agreement pertained to the configuration of three lots to be retained by the defendants; two of which were "to be established by mutual agreement to be negotiated . . ." by the parties ". . . prior to signing contract." Plaintiff's Exhibit 2 includes a handwritten note along the margin dated 3/28/97 with the initials of the Wrights stating, "This is a working guideline. A final agreement is to be prepared no later than April 30th 1997." Even the plaintiff indicated in this Letter of Intent prepared by its CT Page 6929 attorney that the purpose of the agreement for access and testing is "to enable him to enter a contract for the purchase and sale of the premises . . ." Clearly, the parties intended this Letter of Intent to be preliminary to a formal contract in the future, and there cannot be a binding enforceable contract where none was intended. The intent of the parties controls.
The plaintiff in argument suggests that the substantial amount of time, effort and money expended since May 14, 1997, in furtherance of the terms of the anticipated purchase and sale agreement referred to in the Letter of Intent and expended, allegedly, with the knowledge and acquiescence, if not support, of the defendants, constitutes conduct indicative of a binding enforceable contract even if the Letter of intent does not.
"The statute of frauds requires contracts for the conveyance of realty to be in writing. (Citation omitted.) We have repeatedly recognized that a contract is enforceable, despite the statute, when, subsequent to the making of the contract, there has been conduct that amounts to part performance. (Citation omitted.) . . . The acts of part performance generally must be such as are done by the party seeking to enforce the contract, in pursuance of the contract, and with the design of carrying the same into execution, and must also be done with the assent, express or implied, or knowledge of the other party, and be such acts as alter the relations of the parties . . . The acts must also be of such a character that they can be naturally and reasonably accounted for in no other way than the existence of some contract in relation to the subject matter in dispute . . ." (Citation omitted; internal quotation marks omitted.) McNeil v. Riccio,45 Conn. App. 466, 470 (1997).
In this case, where the clear intent of the parties was that there would be a final written contact for the sale and purchase of the premises, the conduct of the plaintiff in engaging the efforts of its engineer to seek the necessary permits and approvals and negotiate with the defendants regarding the properties to be retained, is perfectly consistent with the belief on the part of the defendants that the plaintiff was continuing its efforts to clear the way for the final written agreement and actual sale and purchase of the premises. The acts were not of such character that they could be accounted for in no other way other than the existence of a binding contract. By October 20th, when it was clear that despite the considerable length of time that had past the plaintiff was having difficulty CT Page 6930 getting the approval of the Town Planner for the sub-division plan and no final agreement had been struck, the defendants indicated a change of heart and further negotiations ensued between the respective attorneys and ultimately broke down. Under the circumstances of this case there is little probability of the theory of partial performance prevailing.
In deciding whether or not to discharge plaintiff's lis pendens the role of the trial court is to determine whether there is probable cause to sustain the validity of the claim; that is, probable cause that judgment will be rendered in the matter in favor of the plaintiff. Dow Condon, Inc. v. Anderson,203 Conn. 475, 479 (1987). "It is important to remember that the plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim . . ." (Citations omitted.) Corsino v. Telesca, 32 Conn. App. 627, 631
(1993). In this matter, the probabilities do not favor the plaintiff and this court cannot sustain the validity of its claim. Of course, this ruling is in no way to be construed as an indication of the merits of any related claim for damages based on detrimental reliance or some other theory; but, rather, is limited to the claim for specific performance of a binding, enforceable contract. An action for monetary damages is not an appropriate basis for filing a notice of lis pendens. Garcia v.Brooks Street Associates, 209 Conn. 15, 22 (1988).
Thus, for all the reasons recited and pursuant to Section52-325b(b)(2)(A) of the General Statutes this court grants the motion of the defendants and orders the notice of lis pendens discharged of record.
Fasano, J.