Bergan, J.
The action is to enforce a purported collective bargaining agreement between the Patrolmen’s Benevolent Association and the City of New York for the period October 1, 1968 to December 31, 1970. The complaint alleges the agreement was made January 28, 1969 between the association and the city and that among its provisions was the establishment of a ratio of 3 to 3.5 between patrolmen’s and sergeants’ salaries to be maintained during the term of contract; that sergeants’ salaries were increased by the city December 18, 1969 and that accordingly patrolmen are entitled to an increase conformably to the ratio.
The action is described in the moving affidavit for summary judgment by plaintiff Edward J. Kiernan, president of the association, as “ a simple action for the breach of the salary provisions of a collective bargaining agreement ’ ’. Plaintiffs have *414 had summary judgment at Special Term, which has been affirmed by a divided court at the Appellate Division.
The issue on appeal as it reaches this court is whether the existence of a purported integrated agreement is left so uncertain in the record as to require a trial; or whether it appears so clearly that plaintiffs are entitled to summary judgment on the papers without trial.
There is a threshold difficulty as to summary judgment in the form the plaintiffs have chosen to plead the contract terms and to formulate their motion for judgment. A party seeking judgment on the basis of a writing must show the writing he relies on is the writing agreed to. But the text of agreement pleaded in the complaint and recited in the moving Kiernan affidavit is the text of a descriptive circular sent by the association to its members February 3,1969 to be voted on.
The text of this circular is not shown to have been accepted by the city; and the initialed agreement relied on by plaintiffs in this court as showing there had been a written contract was expressed in a different text. In an action based, as this one is, on a specific writing, summary judgment ought not be granted on showing a different writing, even though the two texts have similarity, without appropriate amendment of pleading and proof to conform the basis for relief claimed to the actual writing relied upon.
There is a more fundamental obstacle to .summary judgment here. Not any of the papers or writings in the record, signed or unsigned, show a complete collective bargaining agreement between the association and the city embracing all the terms and conditions which had been canvassed by negotiators.
There is a writing initialed on January 29 by a representative of the association and of the city which shows an accord on some terms, including the ratio with sergeants’ salaries, but both in what it says and what it covers it is not a complete or independent collective bargaining agreement. This is the specific instrument which plaintiffs in this court say is an independently enforceable agreement on which they are entitled to summary judgment.
The affidavit of Herbert L. Haber, Director of Labor Relations of the city, who handled the negotiations with the association and who initialed the January 29 accord, filed in opposition *415 to plaintiffs’ motion for summary judgment, states not only that there was “no written collective bargaining agreement” between the association and the city as of May 7, 1970, but that for the preceding year “ the parties [including the association and city] have been attempting to set forth the terms of the entire agreement in a formal written collective bargaining contract.”
He swore further that in the fall of 1969 the association had submitted “ a proposed draft of a written contract ”. On the motion for summary judgment these statements must be accepted as true and they require a trial on the issue whether it was the intention of the parties to integrate their preliminary understandings and accords reached in the course of negotiation into a formal and final writing covering the full contractual relation.
The issue, then, is whether it was the intention of the parties that the accord as to part of the subjects of negotiation should become an independent agreement; or whether it was intended, as the Haber affidavit indicates, there should be further and ultimate formalization in writing. The Restatement notes that “ An agreement is integrated ” when the parties adopt a writing or writings" ‘ ‘ as the final and complete expression of the agreement ” (Restatement, Contracts, § 228). The draft of Restatement, Second (§ 235, subd. [3]) broadens this somewhat but is in the same sense. On the showing made on this record the question whether there has been integration here is a question of fact.
The decisional law in New York is consistent with this. In Scheck v. Francis (26 N Y 2d 466) Chief Judge Fuld wrote for the court that ‘‘if parties to an agreement do not intend it to be binding upon them until it is reduced to writing and signed by both of them, they are not bound and may not be held liable until it has been written out and signed ” (pp. 469-470).
In such a situation, as Presiding Justice Botein noted in Brause v. Goldman (10 A D 2d 328, affd. 9 N Y 2d 620), the “ necessary finality of assent is lacking ” (p. 332). (See, also, Schwartz v. Greenberg, 304 N. Y. 250, and Harvey v. General Cable Corp., 1 A D 2d 79, affd. 2 N Y 2d 986.)
Corbin regards this kind of situation as typically presenting a question of fact, i.e., where the parties have “ the understanding during this process [settling some details] that the agreement *416 is to be embodied in a formal written document ”. (1 Corbin, Contracts, pp. 97, 98.)
If there are conditions which are regarded as important still left for adjustment it may be held that there has been no enforceable agreement. In Arliss v. Brenon Film Corp. (230 N. Y. 390) Judge Hogan, writing for the court, was of opinion that the evidence disclosed an intention that a contract should not be deemed to have been made “until such .conditions should be mutually agreed upon and embodied in a written contract ’’ (p. 400);
Judge Pound, considering purported contract in Ansorge v. Kane (244 N. Y. 395) where the parties had agreed to buy and sell and to the purchase price, but had not agreed on terms of sale concluded they had failed to agree on “an important element ” of the “ complete contract ” (p. 400). (To the same general effect see, also, Willmott v. Giarraputo, 5 N Y 2d 250, and Hart v. Socony-Vacuum Oil Co., 291 N. Y. 13.)
In support of the Haber affidavit stating that it was the intention of the parties to formalize their understanding in a complete contract is the text of the written accord of January 29 itself. Its fragmentary internal structure strongly suggests other things were necessary to full integration of the agreement of the parties.
This instrument describes itself as a “ Modification of ‘ Proposed Collective Bargaining Agreement ’ ’ ’ between the association and the city. The proposed agreement to which this refers is the text of a draft distributed to the association members November 21, 1968. This proposed agreement had been previously rejected by the members of the association.
It seems obvious that this modification of a proposed agreement is not itself a complete agreement and the change in details all hang on some final formalization. Some of them, e.g., that referring to the time of work of the 5% night shift, is unintelligible without being filled in by some other interpretive writing.
The court inquired of the city on the argument about its custom followed in executing complete collective bargaining agreements, formalizing all terms. There has been filed with the court the texts of some 28 complete collective bargaining agreements executed between 1966 and 1969.
*417 The city on January 4, 1971 in lieu of a sur-rebuttal brief filed with the court the constitution and by-laws of plaintiff association which require that collective bargaining agreements with the city shall be reduced to writing. Plaintiffs reply under the same date that this is what was done here; but, of course, the question remains whether it was intended by the parties in this negotiation that there should be a further rounded agreement.
Plaintiffs argue also in support of summary judgment that the city had recognized ‘ ‘ the agreement ’ ’ by paying the salaries which had been fixed in the accord of January 29, 1969. The city did pay those salaries retroactively to October 1,1968 under the authority of an order made by the Mayor March 28, 1969, but it expressly provided that positions covered by it ‘ ‘ shall not be eligible for any further salary or fringe benefit increases prior to January 1,1971 ”, the end of the contract period.
This would seem to negate a contemporaneous intention by the city to have the tie-in with sergeants’ salaries effect an increase before the end of the contract period and would bear on one of the issues to be tried out in the action.
The evident fact seems to be that this was a piecemeal negotiation and settlement in writing of contract terms. That, however, does not make the terms binding if there were any condition to their being binding dependent upon a more formal writing or upon agreement on other material terms. Whether there were such conditions is shown by the papers to be a sharply controverted issue, and, hence, one not determinable on summary judgment.
Nor does the issue of fact dissolve into one determinable as a matter of law because there was part performance of the written piecemeal agreement. That would occur, despite the conditions if they existed, if the parties were satisfied that any future agreement must and would contain the elements performed, namely, the salary increase.
The important and only issue in this case is whether the piecemeal agreement, and such agreement there certainly was, for a ratio between sergeants and patrolmen, was conditional, either on a full collective agreement signifying total agreement of all issues in dispute, or on a formal written collective agreement signifying not only full agreement on all terms but docu *418 mentation removing risks of dispute as to terms. That issue is, on the present record of affidavits, and concededly incomplete and unapproved drafts and counter-drafts, an issue of fact.
The counterclaim of the city was properly dismissed.
The order should be modified by reversing so much thereof as grants summary judgment to plaintiffs on the complaint and otherwise affirmed, without costs.