■ KENYON & ECKHARDT, INC., et al., Respondents, and ALLY & GARGANO, INC., Intervenor-Appellant, v 805 THIRD AVE. Co. et al., Appellants, and BAKER

& McKENZIE, Intervenor-Appellant. — Judgment, Supreme Court, New York County (Blangiardo, J.), entered August 10, 1981, affirmed, with one bill of costs and disbursements payable by defendants-appellants, 805 Third Ave. Co., Sherman Cohen and Edward Cohen, to plaintiffs-respondents, Kenyon & Eckhardt, Inc., and K & E Real Estate, Inc. Aside from an intervenor-plaintiff-appellant, the parties on this appeal are plaintiffs-respondents Kenyon & Echkardt, Inc., and its wholly owned subsidiary, K & E Real Estate, Inc. (together K&E), who had signed a lease with defendants-appellants (the landlords) for 11 floors in a building, still then existing only on paper, which had been planned and projected by the landlords, the corporate defendant-appellant and its two principals, the individual defendants-appellants. At the time the lease was signed, it was not known if governmental authority would permit the addition of four "bonus floors" to the ordinarily permitted maximum height of the projected building. It was accordingly provided in the lease's article 45, in effect, that should there be necessity to change the plans of construction in any way that would interfere with the lease's space allocation, "the parties shall recalculate * * * to reflect any said change proportionately". When the Board of Estimate refused to allow the increased height, the landlords notified plaintiffs that, in this circumstance, they could not "proceed with the Building contemplated." K&E had been granted the *sole* right to cancel the lease upon such a happening; it did not do so, and declared forthrightly in a letter that the "major change" referred to in the landlords' letter "can be dealt with in accordance with Article 45." So much for cancellation by K&E. Each side was afforded an option to cancel if the governmental authority which would pass upon the application to permit additional height did not rule by a certain date, but that possibility was obviated when the ruling was provided well before the deadline. Thus, the lease was never effectively canceled despite the landlords' insistence that it had been. Nor was the contract incapable of performance since article 45 dictated the manner of its rescue in the event of disapproving governmental action. Meanwhile, the landlords entered into another lease with intervenor-plaintiff-appellant Ally & Gargano, Inc., leasing to it two of the floors theretofore listed to be occupied by K&E, which brings up the landlords' main argument, the principal theme of the dissent: that K&E was "equitably estopped" from its insistence that the lease be performed subject to article 45 procedures. Plaintiff, insisting upon specific performance, commenced this action against the landlord, seeking that relief. After an unsuccessful attempt to defeat summary judgment on the basis of claimed cancellation and impossibility of performance, reargument was sought upon the basis of estoppel, as well as on the claimed making of a new oral agreement between K&E and the landlords, described in more detail in the dissent. Initially, considered as possibly misnamed as reargument and regarded as a renewal application, that motion must be rejected, whatever its label. This was not new matter discovered for the first time after the unsuccessful original attempt to beat back summary judgment; it must have been known to the landlords, based as it was on their own negotiations with K&E. Nor did these facts change between the first decision and the reargument attempt. In any event, the attempted reargument itself was a complete turn of direction, the landlords having earlier insisted that the oral negotiations could not be considered on the motion for summary judgment. The content of the negotiation is such as not to defeat summary judgment, being, in one aspect, no more than settlement negotiations between parties still in open warfare, which may not be considered under an ancient rule. In another view, and given their most logical interpretation, the oral negotiations constituted an attempt by both K&E and the landlords to carry out the contract by implementation of article 45. The landlords may not argue that the negotiations under article 45,

seeking to carry out this important element of the contract, actually resulted in its very destruction as a viable, enforceable agreement. "Performance" by the landlords was not in reliance upon an oral agreement of modification but obviously only in furtherance of article 45. It must be observed at this juncture that the situation here was unlike that presented in *Rose v Spa Realty Assoc.* (42 NY2d 338), wherein there was no "Article 45" provision to afford a safety valve against impossibility of performance of the initial contract so as to permit — indeed, demand — recourse to "mutual departure from the written agreement" (at p 344). As to A&G, whatever may be its rights as against the landlords for leasing the identical space to two tenants — and it may well be that all of the new tenants making claim to "leased" space may find accommodation in the landlords' building* — it seems to have none, on this record, which may be asserted against K&E. Nor are there questions of fact, by which summary judgment may be defeated. Thus, as to those matters adjudged by Special Term with finality, we affirm, but a word of explanation to interpret parts of the order and judgment is required. The "order and judgment" is a melange of clauses, some, applicable primarily to motions, merely ordering. They create no difficulty, applicable as to matters not now in dispute. We regard only those paragraphs which have "ordered, adjudged, decreed and declared" as the judgment itself. Aside from a paragraph, not in dispute on this appeal, declaring in favor of plaintiff's purchased limited partnership interest in defendant corporation, the decretal paragraphs add up to declaring K&E's lease valid and enforceable, and directing compliance by the landlords in accordance with article 45, inclusive of nonparties who may be affected by the complexities created by the landlords' acts, to be decided "by a court of competent jurisdiction." Some of these parties, inclusive of A&G, have commenced suit and some may do so hereafter, but the rights of all have been preserved by the judgment, a careful exercise in the art of deciding no more than necessary at this particular juncture, and leaving final determination for adjudication as between the parties to this appeal, as well as nonparties claiming aggrievement, to await the outcome of further proceedings in the Supreme Court. For this purpose, and except for the specific performance, we affirm, as limited by article 45, the continued proceedings at Special Term should be carried forward without undue delay. Concur — Kupferman, Carro and Markewich, JJ.

Murphy, P.J., dissents in a memorandum as follows: Upon a motion for summary judgment, the statements in the opposing affidavits must be accepted as true. *(Patrolmen's Benevolent Assn. of City of N.Y. v City of New York,* 27 NY2d 410, 415.) In this proceeding, emphasis must be placed upon the affidavit of Josef Mittleman, vice-president of Cohen Brothers Realty & Construction Corp. and an associate of the Cohen defendants. The latter are general partners in defendant 805 Third Ave. Co. (landlord), the principal owner of the subject building. The Mittleman affidavit raised the contention, for the first time upon reargument, that the lease with plaintiff Kenyon & Eckhardt, Inc. (Kenyon), had been orally modified. Normally, this contention should not be considered for the first time upon reargument because the landlord was aware of this defense when it answered the original motion. However, major tenants, such as plaintiff Ally & Gargano, Inc. (Ally), were not privy to the private negotiations between Kenyon and the landlord. Therefore, in fairness to Ally and the other major tenants in the building, the Mittleman affidavit should be given a most favorable reading to determine whether any

---

* We were advised on argument, without denial, that the landlords have procured release of sufficient space to provide for all those, parties and nonparties hereto, who may seek it.

issue of fact exists to preclude a grant of summary judgment to the plaintiffs. As originally planned, the building was to contain 35 floors. Kenyon was the last major tenant to execute a lease. Its lease, executed on January 9, 1980, provided that it occupy 11 floors in the building. Simultaneously with the execution of the lease, plaintiff K & E Real Estate, Inc. (K&E), Kenyon's subsidiary, obtained a 10% limited partnership interest in the building. On April 21, 1980, the city planning commission approved the plans for the building but deleted two of the floors. The deletion of these two floors caused obvious problems because the building had been fully leased on a 35-floor basis. At that juncture, Kenyon's representatives told the landlord that it could renegotiate with the other major tenants and that Kenyon, as a partner through K&E, would be the last to negotiate. Kenyon agreed to give up two floors if the landlord could give it two "take-back" floors. Upon the strength of that oral understanding, amendments to the original leases were then executed with Ally, AC&R Advertising and Baker & McKenzie. On June 17, 1980, the board of estimate approved the plans but deleted two more floors. According to Mittleman, Kenyon's representatives again agreed to relinquish its rights to one more floor. As a result of these negotiations the landlord also reacquired one floor from Bozell & Jacobs for $275,000 so that it could be leased to Kenyon. Moreover, based upon Kenyon's continuing representation that it would remain flexible in that very complex and confusing state of affairs, the landlord proceeded with further negotiations and executed additional amendments with many of the tenants. Article 32.01 of the Kenyon lease provides "This lease may not be changed or terminated orally". Subdivision 1 of section 15-301 of the General Obligations Law is also pertinent and it reads as follows: "1. A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the changes is sought or by his agent." Viewing the evidence most favorably to the landlord, it shows more than a mere executory agreement between Kenyon and the landlord. The proof tends to show full performance by the landlord insofar as it entered into amendments with Ally and the other major tenants in reliance upon its oral agreement with Kenyon. At the very least, the evidence suggests partial performance on the landlord's part because its actions are unequivocally referable to that oral agreement. Specifically, the landlord leased certain floors to major tenants that had previously been leased to Kenyon. This action upon the landlord's part tends to substantiate its claim of oral modification. Summary judgment may also be precluded on the alternative theory of estoppel. The landlord relied to its detriment upon the oral modification made with Kenyon, and thus Kenyon may be estopped from invoking either article 32.01 or subdivision 1 of section 15-301 of the General Obligations Law if the oral arrangement is satisfactorily proven by the landlord. In short, the motions for reargument should have been treated as motions for renewal. The motions for renewal should have been granted, and upon renewal, Special Term's original determination should have been vacated, and in lieu thereof it should have been denied plaintiffs' motion for summary judgment upon the authority of *Rose v Spa Realty Assoc.* (42 NY2d 338).