22

In the Matter of PHIL CARUSO, as President of the Patrolmen's Benevolent Association of the City of New York, Inc., et al., Respondents, v BENJAMIN WARD, as Police Commissioner of the City of New York and as Executive Chairman of the Board of Trustees of the Police Pension Fund, Article II, et al., Appellants.

First Department, March 16, 1989

## APPEARANCES OF COUNSEL

*Raymond E. Kerno* of counsel *(Jacqueline A. Pincus* with him on the brief; *Lysaght, Lysaght & Kramer,* attorneys), for respondents.

*Elizabeth Dvorkin* of counsel *(Larry A. Sonnenshein* and *Julian L. Kalkstein* with him on the brief; *Peter L. Zimroth, Corporation Counsel,* attorney), for appellants.

## OPINION OF THE COURT

SULLIVAN, J.

This action, originally commenced as a CPLR article 78 proceeding, challenges a determination by the Board of Trustees of the New York City Police Pension Fund (Pension Fund)

denying a request by the Patrolmen's Benevolent Association (PBA) that, pursuant to a stipulation of settlement into which the city and the PBA entered on June 11, 1971, the Pension Fund include parity supplement amounts paid to police officers in the calculation of the supplemental retirement allowances provided by General Municipal Law § 207-i. The court which heard the matter converted the proceeding into an action for declaratory judgment and declared that said parity supplements paid pursuant to the settlement agreement to patrolmen who retired between October 1, 1968 and December 31, 1970 must be included as part of their retirement allowances for the purpose of computing section 207-i's cost-of-living pension supplement. This appeal followed.

In 1970, the PBA brought an action alleging that a 1969 collective bargaining agreement for the period from October 1, 1968 to December 1, 1970 provided for the maintenance of a 3 to 3.5 ratio between patrolmen's and sergeants' salaries during the term of the contract. Since sergeants' salaries had been increased on December 18, 1969, the PBA argued that patrolmen were entitled to an increase to maintain the ratio. The city resisted the claim on the ground that a collective bargaining agreement had not been reached. The PBA was awarded summary judgment in its favor, and this court affirmed *(Patrolmen's Benevolent Assn. v City of New York, 35 AD2d 697)*. The Court of Appeals reversed and remanded the matter to the Supreme Court to determine whether the stated ratio "was conditional, either on a full collective agreement signifying total agreement of all issues in dispute, or on a formal written collective agreement signifying not only full agreement on all terms but documentation removing risks of dispute as to terms." (27 NY2d 410, 417-418.)

On February 22, 1971, after a trial, judgment was entered in favor of the PBA. A notice of appeal was filed, but before the appeal could be heard, the PBA and the city entered into a "so ordered" stipulation settling and discontinuing the "claim and judgment * * * with prejudice". Paragraph 1 of the stipulation provided, *inter alia,* that a patrolman who was employed for the entire period between October 1, 1968 and December 31, 1970 would receive "a lump-sum settlement of $2700". A patrolman employed for less than the entire period would receive "a lump-sum settlement computed on the basis of $100 per month and the pro rata portion of $100 for any fraction of a month of such employment."

The stipulation also provided that any patrolman who re-

tired between October 1, 1968 and December 31, 1970 would receive a supplement to his retirement allowance "equal to the difference between the retirement allowance computed at the time of retirement and what such retirement allowance would have been if the final figure used in computing the same had been $1200 higher." The stipulation further provided that the payments constituted full and complete satisfaction of all sums claimed in the PBA action, and released defendant from all further liability. Paragraph 3 of the stipulation stated that "[e]xclusive of any salary increase which may be provided for in a collective bargaining agreement to be entered into for a period commencing January 1, 1971, the annual base salary rate for each Patrolman grade shall be increased in the amount of $1200, effective January 1, 1971".

On July 13, 1971, the Transit Authority (TA) and the Transit Police Benevolent Association (TPBA) resolved their dispute over the parity issue by entering into a similar agreement, which provided that the lump-sum payments for transit patrolmen and the parity supplement for retired transit patrolmen would be subject to the same requirements as the payments made to city patrolmen pursuant to the June 11, 1971 stipulation.

In a formal opinion, dated November 5, 1971, the Corporation Counsel responded to an inquiry by the then New York City Director of Labor Relations as to whether enabling legislation was required to permit the city to carry out its commitments under the 1971 PBA-city agreement, as well as similar stipulations of settlement entered into earlier that year. The issue arose because, as a city-maintained pension fund, the Pension Fund may not, in the absence of legislation permitting the same, pay additional sums as a supplement to payments specified by law. Absent such legislative authorization, any increase in a pension previously awarded to retirees would violate the constitutional prohibition against gifts of public funds to private individuals. *(Matter of Mahon v Board of Educ.,* 171 NY 263, 266-267; NY Const, art VII, § 8; art VIII, § 1.)

The Corporation Counsel concluded that the parity supplements payable to retired police officers and other affected retirees under stipulations similar to the PBA-city stipulation settling the parity litigation would not constitute supplemental retirement allowances. Instead, he advised, these supplements should be considered as monetary settlement payments not requiring specific statutory authorization. The Corporation

Counsel reasoned that: "A basic characteristic of the Court determinations expressed in the stipulations is that the salary rates for the period October 1, 1968—December 31, 1970 are not therein declared, recognized or deemed to be increased by the amount of the 'parity' increase claimed by the uniformed force members. Instead, it is directed by the Court that the City pay the members certain sums of money in consideration of the release and extinguishment of the claims of the members based on the contention that such higher salaries were payable for such period. In the *Patrolmen's Benevolent Association* case, it is also directed in effect that the City waive its appeal from the judgment of February 22, 1971."

Significantly, the Corporation Counsel also explained why the "lump-sum settlements" could not be characterized as salary.

"If the actions had not been settled and if it had been finally decided therein that the plaintiffs were entitled to the higher salary rates claimed, affected uniformed force members who retired during the October 1, 1968—December 31, 1970 period would not thereby have become entitled to supplements to their retirement allowances. Instead, they would have become entitled to a recalculation of their retirement allowances and payment of the larger benefits from the date of retirement on the basis of the higher salary. * * *

"The Court determinations embodying the stipulations, however, do not provide for higher retirement allowances derived from a recalculation of the retirement allowances originally awarded. The retirement allowances granted these retirees, which were based on the applicable salaries being paid during the October 1, 1968—December 31, 1970 period, remain unchanged under the terms of the Court directions expressed in the language of the stipulations. Instead, supplements are to be paid to the affected retirees on the basis of the method of determination set forth in the stipulations and approved by the Court.

"Supplements to a retirement allowance are customarily paid by monthly checks issued along with the monthly retirement allowance checks.

"If the above-described actions had not been settled and if the plaintiffs had prevailed, the affected retirees would have been entitled to receive periodic payments of their recomputed higher retirement allowances for the remainder of their lifetimes. The supplements payable under the Court mandates

resulting from the stipulations of settlement are required to be paid over the same period."

At the time the PBA-city and TA-TPBA stipulations were signed, police and transit police retirees who retired between October 1, 1968 and December 31, 1970 were not eligible to receive the cost-of-living supplemental retirement allowances then provided for by General Municipal Law § 207-i. Nor did the settlement stipulations provide for any prospective section 207-i benefits for these retirees in the event of an amendment to the law.

Almost 10 years later the Legislature amended section 207-i to include the October 1, 1968 through December 31, 1970 police pension fund retirees as among those eligible to receive supplemental retirement allowances. (L 1981, ch 422.) Subdivision (b-2) (3) of section 207-i provided that the amount of such additional supplemental retirement allowance shall be "a percentage * * * of the * * * retirement allowance" of the first $8,000 thereof "computed without optional modification". Inasmuch, however, as the parity supplement payments made under the stipulations did not constitute a portion of a retiree's "retirement allowance", the Pension Fund did not include them in the base for a supplemental benefit determination under section 207-i.

Four years after the amendment of section 207-i, by letter dated November 3, 1985, the PBA requested that the Board of Trustees provide those members who retired between October 1, 1968 and December 31, 1970 with a cost-of-living supplement calculated to include the parity supplement payments as part of their retirement allowance. The Trustees requested comment from the Corporation Counsel, who relied upon a December 5, 1985 memorandum from the Acting Chief of the Pensions Division of the Corporation Counsel, addressed to the Board of Trustees of the New York City Employees' Retirement System (NYCERS), discussing the same issue insofar as it affected transit police retirees.

As that memorandum explained, the supplements paid to retirees pursuant to the TA-TPBA settlement agreement are not includable in determining a retiree's supplemental retirement allowance because "the settlement agreement supplements are not a part of the retirement allowance." The memorandum further emphasized, "The payments provided for in the stipulations are neither described nor referred to therein as salary or wages. On the contrary, these payments

represented a monetary compromise and settlement of claims for salary." The memorandum also noted that "when the retirement allowances of these retirees were computed, the annual salary, overtime, shift differential and holiday pay components of their retirement allowance salary bases were calculated on the basis of the then salaries, without inclusion of the $100-per-month monetary settlement amount. The settlement stipulations do not call for a recomputation of these retirees' retirement allowances to reflect a salary base increased by salary of $100 a month, as would be the case if the lump-sum settlement payments were salary."

On June 11, 1986, the Board of Trustees voted, as had the Board of Trustees of NYCERS previously, to deny the request that computation of the cost-of-living supplemental retirement allowance include the parity supplemental payments paid to those retirees who retired between October 1968 and December 1970. The article 78 proceeding was thereafter commenced.

■ In declaring in favor of the PBA, the court found, without specifying the particular language in the stipulation which supported the view, that "the parties clearly expressed their intention that the $1200 received by those who retired between October 1, 1968 and December 31, 1970 would be included in calculating their retirement allowances." As to the legality of reading the stipulation to construe parity supplements as part of the retirees' salaries, the court held that "[t]he 'so ordered' stipulation, representing a mandate of the Court, is sufficient authorization to the City to pay the supplements without an enactment of legislation." Since we find that the court-ordered stipulation of settlement is, on its face, clear that the lump-sum payments are not salary and that the parity supplements are not retirement allowances, we reverse and declare in favor of the Trustees.

Although eventually successful to the extent of securing a judgment in its favor in the earlier action against the city alleging breach of a collective bargaining agreement for failure to increase the salaries of patrolmen so as to maintain a differential with sergeants' salaries at a ratio of 3 to 3.5, the PBA chose to forego the risk of reversal and further litigation and agreed to relinquish its members' claims to higher salaries and the recalculation of retirement allowances that would have followed. It opted for the certainty of a "lump-sum settlement" and a "supplement" to the retirement allowance

based on its members' original salaries. By stipulating to such a settlement, the PBA not only agreed to terminate its lawsuit, with prejudice, it allowed the judgment in its favor to be vacated. In exchange for the certainty of the explicit terms of the stipulation, the PBA agreed to "a new superseding agreement which [would be] the measure of each party's obligation to the other". *(Crouse-Irving Mem. Hosp. v Moore,* 84 AD2d 954, 955.) It is as if the original litigation "had never been begun". *(Yonkers Fur Dressing Co. v Royal Ins. Co.,* 247 NY 435, 444.)

Thus, the PBA's claim that the city owed its patrolmen a higher salary for the period of October 1, 1968 through December 31, 1970 was extinguished by the stipulation. From that settlement the PBA derived the benefit of the city's agreement to pay a "lump-sum settlement" of $2,700 to any patrolman employed for the entire period, while patrolmen employed for less than that time received a lump-sum settlement computed on the basis of $100 per month. In addition, the city agreed to pay a supplement to the retirement allowance. If the underlying lawsuit had not been settled, and if it had been finally decided that the patrolmen were entitled to the higher salary rates claimed, affected uniformed force members who were retired during the October 1, 1968—December 31, 1970 period would then have had their retirement allowances recalculated and would have received greater benefits from the date of their retirement on the basis of higher salaries, albeit salaries established in litigation. On the other hand, the city, although agreeing to the lump-sum payments, derived a pension saving because these payments did not constitute salary.

A stipulation is a contract between the parties and is, therefore, governed by the principles of contract law for interpretation and effect. *(See, Davis v Sapa,* 107 AD2d 1005; *Nishman v De Marco,* 76 AD2d 360, *appeal dismissed* 53 NY2d 642.)* A contract must be interpreted so as to give effect to the intentions of the parties as expressed in the unequivocal language employed. *(Fiore v Fiore,* 46 NY2d 971, 973; *Breed v Insurance Co.,* 46 NY2d 351, 355; *Rodolitz v Neptune Paper Prods.,* 22 NY2d 383, 387.)* Every part of the contract should be considered to effectuate its general purpose. *(Tougher Heating & Plumbing Co. v State of New York,* 73 AD2d 732, 733.)* A court should not "make or vary [a] contract * * * to accomplish its notions of abstract justice or moral obligation" or allow equitable considerations to obviate that which should

have been foreseen and guarded against. *(Breed v Insurance Co., supra,* 46 NY2d, at 355.)

Significantly, nowhere in what can only be characterized as a long and detailed stipulation is the "lump-sum settlement of $2700" or the "lump-sum" payment of $100 per month denominated as "salary". In addition, in providing that any patrolman who retired during the relevant time period "shall receive a supplement to his retirement allowance equal to the difference between the retirement allowance computed at the time of retirement and what such retirement allowance would have been if the final figure used in computing the same had been $1200 higher," the stipulation accorded the $1,200 a usage that might be likened to salary but is not salary as it is separate and distinct from the "final figure".

Thus, the lump-sum payment was clearly not intended to be salary nor was the parity supplement intended to be retirement allowance. In fact, when the stipulation speaks of a salary increase, it does so in specific terms: "Exclusive of any salary increase which may be provided for in a collective bargaining agreement to be entered into for a period commencing January 1, 1971, the annual base salary rate for each Patrolman grade shall be increased in the amount of $1200, effective January 1, 1971". Since the parties chose to cast certain payments and costs in specific terms, these terms should be given their reasonable, lawful and effective meaning. (Restatement [Second] of Contracts § 203.)

The PBA, however, 14 years after the execution of the stipulation of settlement, would construe the specific terms "lump-sum settlement" and "supplement" payments to mean "salary" and "retirement allowance", respectively. When the parties drafted the stipulation they obviously intended "salary" to mean "a fixed periodical compensation paid for services rendered" (Black's Law Dictionary 1200 [5th ed]), and "lump-sum settlement" to refer to a single payment as final disposition of the disagreement or difference between the parties *(id.,* 1231). They could not have intended that "supplement" mean "retirement allowance", or that all these words be used interchangeably.

In addition, it should be noted that paragraph 1 of the stipulation explicitly states that the payments made pursuant thereto "shall constitute full and complete satisfaction of all sums claimed * * * and shall release defendant from all further liability", which clearly evinces an intention to limit

the city's financial liability to those obligations specifically expressed within the four corners of the stipulation. While the PBA might have sought inclusion of language protective of its members in the event of an amendment of section 207-i of the General Municipal Law, its failure to do so cannot undermine the basic principle of contract interpretation that the intention of the parties as "it existed at the time the contract was executed * * * must control rather than any subsequent intention tailored to complement an individual's posture once an agreement has gone sour." *(New England Merchants Natl. Bank v Iran Power Generation & Transmission Co.,* 502 F Supp 120, 127, *mandamus denied* 646 F2d 779, *on remand sub nom. Marschalk Co. v Iran Natl. Airlines Corp.,* 518 F Supp 69, *revd* 657 F2d 3, *cert question answered* 453 US 919.)

Finally, it should be noted that the Pension Fund, as a city-maintained pension fund, may not pay an additional supplement to a retiree's retirement allowance, unless expressly permitted by law. (NY Const, art VII, § 8; art VIII, § 1; *see, Matter of Mahon v Board of Educ.,* 171 NY 263, *supra.)* The Pension Fund is not legislatively authorized to make such payments. Thus, a reading of the stipulation so as to construe the parity supplements as part of the "retirement allowance" for the purpose of calculating section 207-i supplements would, in effect, render these parity supplements illegal. Such an interpretation would be contrary to the general rules of construction, which favor an interpretation which renders the contract legal, provided, of course, that the agreement is capable of such an interpretation. *(See, O'Neil Supply Co. v Petroleum Heat & Power Co.,* 280 NY 50, 56.) The stipulation should, therefore, be interpreted so that the particular sums paid are not considered salary or retirement allowance and the parity settlements subject to inclusion in the supplement calculation under section 207-i.

■ Even if it were not clear that the stipulation did not intend that lump-sum payments be construed as salary and parity supplements as retirement allowances, the interpretation of the settlement agreement by the Board of Trustees, which is specifically charged with the administration of the Pension Fund *(see,* Administrative Code of City of New York, § 13-216), insofar as it applies to the applicable provisions of law and the rules and regulations under which the fund functions, is "entitled to great weight and may not be ignored". *(See, Ferraiolo v O'Dwyer,* 302 NY 371, 376; *see also,* 2 NY Jur 2d, Administrative Law, § 78.) Thus, the Board's

construction of the stipulation of settlement should not be disturbed, unless it is irrational or unreasonable. *(Matter of Howard v Wyman,* 28 NY2d 434, 438; *Matter of Hohensee v Regan,* 138 AD2d 812, 813.)

The Board's determination that the lump-sum payments were not salary and the parity supplement not retirement allowances should be upheld. In order for lump-sum payments to be part of the retirement allowance, they must have been first treated as salary. But, as already noted, the lump-sum payments are neither described nor referred to in the stipulation as salary or wages. Nor did the police department treat these payments as salary for purposes of computing overtime, shift differential or holiday pay components during the period of October 1, 1968 through December 31, 1970.

In addition, the parity settlements provided by the stipulation of settlement have been consistently construed as not being part of the retirees' retirement allowances. The Pension Fund did not increase, change or otherwise affect a retiree's retirement allowance because of the stipulation. The retiree received the same retirement allowance, which the Pension Fund continued to pay by monthly checks from its funds. The parity supplements, however, were paid by separate checks and from a different source, namely, city funds. Thus, each retiree received two checks, one for his retirement allowance from the Pension Fund and the other from the city for his parity supplement.

Furthermore, contemporaneous interpretations of the terms of the stipulation have concluded that the lump-sum payments were not salary and the parity supplements not retirement allowances. An opinion of the Corporation Counsel, dated November 5, 1971, concluded that, since the parity supplements did not constitute supplemental retirement allowances, new legislation was not required to enable the Pension Fund to carry out the terms of the stipulation. It should also be noted that this opinion was never challenged, nor was any disagreement with its conclusion ever expressed by any interested party, including the PBA. In addition, the then Assistant Chief Actuary for the Fire Department, Jonathan Schwartz, in a 1973 letter to the New York City Director of Labor Relations addressing an issue not relevant here, concluded that the payments made pursuant to the stipulation were not intended to be salary, nor part of the retirement allowance of October 1, 1968 through December 31, 1970 retirees. Contemporaneous interpretations by the administer-

ing agencies may not be ignored or lightly disregarded. *(See, Udall v Tallman,* 380 US 1, 16; *see also, Aluminum Co. v Central Lincoln Util. Dist.,* 467 US 380.)

The Pension Fund has consistently interpreted the stipulation payments as not constituting salary or retirement allowance. Not surprisingly, therefore, with the amendment of section 207-i of the General Municipal Law, the Pension Fund adhered to its original interpretation of the stipulation of settlement and determined that the parity supplements did not constitute retirement allowances for the purposes of calculating section 207-i supplements. Great weight should be given to the administering agency's interpretation and practice where it has been continuous, uniform and consistent. *(Ferraiolo v O'Dwyer, supra,* 302 NY, at 376.)

Accordingly, the judgment of the Supreme Court, New York County (Karla Moskowitz, J.), entered November 23, 1987, which declared that parity supplements paid pursuant to a stipulation of settlement, dated June 11, 1971, between the city and the PBA, to patrolmen who retired between October 1, 1968 and December 31, 1970 must be included as part of their retirement allowances for purposes of computing General Municipal Law § 207-i pension supplements, should be reversed, on the law, without costs or disbursements, and a declaration made in favor of the Board of Trustees that said parity supplements should not be so included.

KUPFERMAN, J. P., CARRO, ASCH and KASSAL, JJ., concur.

Judgment, Supreme Court, New York County, entered on November 23, 1987, unanimously reversed, on the law, the judgment vacated, without costs and without disbursements, and declaration made in favor of the Board of Trustees that said parity supplements should not be so included.